UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA H. SMITH, *et al.*,

                Plaintiffs,         Case No. 10-14257
                                              Honorable Nancy G. Edmunds
     v.                                  Magistrate Judge David R. Grand

WAYNE COUNTY, *et al.,*

                Defendants.
_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [68]**

Before the court is Plaintiffs' Motion for Default Judgment [68]. An Order of Reference [89] was entered on August 17, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). The motion is fully briefed,[1] and the court heard oral argument on September 27, 2012.

**I.     RECOMMENDATION**[2]

For the reasons set forth below, **IT IS RECOMMENDED** that the District Court **DENY** Plaintiffs' request for entry of a default judgment against Defendants. It is further

---

[1] Plaintiffs' motion was filed on May 7, 2012. (Doc. #68). Despite the fact that Defendants filed an untimely response to Plaintiffs' motion on June 18, 2012 (Doc. #79), they also filed a motion for leave to file a supplemental response just one week before the hearing. (Doc. #93). Plaintiffs filed a response in opposition to that motion (Doc. #94), to which Defendants replied. (Doc. #95). The court will address Defendants' motion for leave in a separate order to follow.

[2] As another Magistrate Judge in this district recently noted, "There appears to be a split in authority on whether a magistrate judge should provide a report and recommendation to a district judge on a Fed. R. Civ. P. 37 motion for sanctions where, as here, the relief sought is dispositive (e.g., default judgment) . . . . Because several judges in this district have viewed a report and recommendation proper in this scenario, and because this Court sees no need to depart from this practice, this Court will make a recommendation to the District Court regarding the pending motions." *Stevenson v. City of Detroit*, 2012 WL 1883282, at *1 (E.D. Mich. Mar. 30, 2012) (internal citations omitted).

1

**RECOMMENDED** that the District Court **GRANT** Plaintiffs' request for additional discovery, and for an award of their reasonable costs and fees incurred in bringing their motion for default judgment, as well as with respect to Defendants' failure to appear for depositions, serve properly signed discovery responses, and produce requested documents, as detailed below.

## II.   REPORT

### A.   Background

#### 1.   *The Allegations in the Complaint*

This case is a civil rights action, brought pursuant to 42 U.S.C. §§1983 and 1988. The case arises out of the death of Plaintiffs' decedent son, Jason Smith, on May 7, 2009, after he committed suicide while being held at the Wayne County Jail. Plaintiff alleges that, on April 28, 2009, Jason Smith had ingested a drug that rendered him highly intoxicated and which severely altered his mental state. (Doc. #75 at ¶25). Jason Smith then entered the house he lived in with his mother, Plaintiff Gloria Smith, and physically and sexually assaulted her. (*Id.*). He also threatened to kill both her and himself if she reported the assault to the authorities. (*Id.* at ¶¶25-26).

The next day, Gloria Smith filed a domestic violence report with the Harper Woods Police Department. (*Id.* at ¶27). She alleges that she did so, in part, due to her concerns about her son's threats of suicide. (*Id.*). She reported these suicide threats to the Harper Woods officers, and they were incorporated into official Harper Woods police documentation. (*Id.*). The next day, Harper Woods police officers arrested Jason Smith. (*Id.* at ¶29). According to Plaintiffs, he tearfully confessed to the crime (on video), expressed enormous remorse for what he had done (on video), and was immediately placed on suicide watch at the Harper Woods Police Department's lockup facility. (*Id.* at ¶¶31-32).

On May 1, 2009, after his arraignment for criminal sexual conduct, Jason Smith was booked into the Wayne County Jail. (*Id.* at ¶¶34-35). Plaintiffs allege that, while in the Wayne County Jail, Jason Smith was not properly pre-classified, classified, housed, monitored, or evaluated for the purpose of identifying him as a person at serious risk of suicide. (*Id.* at ¶¶39-48). Instead, Jason Smith was assigned to a maximum security ward, which Plaintiffs allege exacerbated his risk of suicide. (*Id.* at ¶¶42, 48). Plaintiffs allege that, for the next six days, Jason Smith kept to himself, was visibly depressed, and cried every day. (*Id.* at ¶49). Plaintiffs further allege that Jason Smith "pleaded for help" by submitting a Wayne County Jail Medical Request form ("kite") requesting "mental health" services because he was "depressed" and was "going to hurt [himself]," but that this kite was ignored. (*Id.* at ¶¶50-54). Plaintiffs allege that, on May 7, 2009, in full view of monitoring officers and video cameras, Jason Smith hanged himself after making a ligature from his bed sheets. (*Id.* at ¶57).

### 2. *The Underlying Discovery Disputes*

On May 7, 2012, Plaintiffs filed the instant motion for default judgment, in which they set forth, in great detail, an alleged pattern of discovery abuses by Defendants that has been ongoing throughout the pendency of this lawsuit. Although the court will not detail each and every instance of alleged wrongdoing, it will briefly discuss the prior discovery disputes that have already resulted in certain sanctions being imposed against Defendants, as well as Defendants' more recent conduct.

#### a. *Prior Discovery Orders*

On April 25, 2011, Plaintiffs filed their first motion to compel discovery, which stemmed from the allegedly disruptive conduct of Defendants' counsel during a Rule 30(b)(6) deposition. (Doc. #25). On June 28, 2011, Magistrate Judge Komives entered an Order requiring

3

Defendants to: (1) produce certain enumerated documents; (2) produce a 30(b)(6) witness for deposition; (3) pay the costs of the court reporter for the truncated deposition; and (4) "conduct themselves in all future depositions in accordance with the Federal Rules of Civil Procedure." (Doc. #32).

Less than one month later, Plaintiffs filed a second motion to compel discovery, for sanctions, and to amend the scheduling order. (Doc. #37). In short, Plaintiffs' motion alleged that Defendants had refused to produce witnesses for depositions, had served untimely responses to written discovery requests, and had refused to produce documents. (*Id.*). Magistrate Judge Komives issued two orders regarding this motion (Docs. #57, 59), including one that awarded sanctions against Defendants for the costs and fees Plaintiffs incurred in filing the second motion to compel.

### b. *Plaintiffs Claim the Discovery Abuses Continued*

According to Plaintiffs, following the entry of the order granting their second motion to compel (and awarding sanctions), they had expected that discovery would proceed as a matter of course. They claim, however, that despite the sanctions orders, Defendants still: (1) refused to schedule depositions Plaintiffs wished to take; (2) failed to serve properly signed discovery responses (even after being alerted to the missing signatures); and (3) failed to allow inspections (or to produce) requested documents. As a result, Plaintiffs filed the instant motion in which they seek a default judgment, or, in the alternative, other forms of relief, including the striking of Defendants' pleadings and discovery responses, additional discovery, and monetary sanctions. (Doc. #68 at 31-32).

### i. *Depositions*

At the hearing on the instant motion for default judgment, counsel for Plaintiffs indicated

that, since the inception of this case, she has issued numerous deposition notices for a total of sixteen (16) Wayne County witnesses. Plaintiffs' motion recites a litany of instances in which Defendants' counsel (who has since left the County's employment and withdrawn from this case) adjourned, cancelled (sometimes at the last minute under extremely questionable circumstances)[3] and/or refused to produce some or all of these witnesses for deposition, all of which resulted in a significant amount of unnecessary work on Plaintiffs' part to attempt to reschedule these depositions – often to no avail. (Doc. #68 at 8-24).

At the time of the hearing, Plaintiffs had completed only six of the sixteen depositions that had been noticed, and their counsel identified the following depositions (among others) that are the next ones they desire to take: Nurse Messelmani-Woods, Deputy Hills, Sergeant Praedel, Lieutenant Berg, Sergeant Florios, Sergeant Troszak, Hardy, Henderson and a Rule 30(b)(6) witness who is knowledgeable about jail procedures regarding medical kites. Absent a default judgment, Plaintiffs seek an order permitting them to: (1) take the depositions of these

---

[3] The circumstances of Nurse Gordy-Jones' deposition are illustrative of the type of gamesmanship which led to the filing of Plaintiffs' instant motion and the court's conclusion that some form of sanctions is warranted. On November 14, 2011, Plaintiffs noticed (for the third time) Nurse Jones' deposition to take place on December 9, 2011. (Doc. #68, ¶42). Because of issues they had had with Defendants' handling of prior noticed depositions, Plaintiffs' counsel wrote to Defendants' counsel on December 2, 2011, to confirm that the deposition would go forward as planned. Two days later, Plaintiffs' counsel wrote back indicating that Plaintiffs could have only a total three hours to take both Jones' deposition and another witness' deposition who was also being deposed on the 9th. Jones' deposition commenced on the 9th, but Plaintiffs' counsel was unable to finish it in the time allotted. On December 12th, Defendants' counsel advised that she wished to finish Jones' deposition on the 16th, rather than start another deposition that had been scheduled for that date. Plaintiffs agreed. However, at 7:02 a.m. on the 16th, Defendants' counsel e-mailed Plaintiffs' counsel cancelling Jones' continued deposition, stating that "…I just learned that [Jones] was not notified to appear today. It's too early for me to find out what happened…I do apologize." (*Id.*, ¶51). Later that day, Defendants' counsel asked Plaintiffs' counsel to get her new deposition dates for the canceled deposition, which Plaintiffs' counsel did about three hours later. Defendants' counsel never responded to confirm the deposition date. (*Id.* at ¶¶52-54). The court concurs with Plaintiffs that counsel's claim about Jones not being notified makes no sense given the timing of her e-mail. Moreover, counsel's apology rings hollow given her failure to respond to Plaintiffs' counsel's same-day e-mail about rescheduling the canceled deposition.

5

individuals (whose depositions have previously been noticed) and (2) take the depositions of some or all of the additional witnesses identified at pages 23-24 of their motion; and requiring Defendants to pare down their witness list (which currently lists 68 individuals as "will call" witnesses) so that Plaintiffs can better determine which additional witnesses, if any, they want to depose.

### ii. Written Discovery

Plaintiffs assert that Defendants have submitted responses to several sets of interrogatories and requests for production that are unsigned by either Defendants and/or their attorneys, as required by the applicable federal rules. (Doc. #68 at 24-26). *See e.g.*, Fed.R.Civ.P. 26(g)(1); 33(b)(5). At the hearing, Plaintiffs' counsel specified that the following sets of discovery responses are all lacking in this respect: (1) Defendants' September 18, 2011 Response to Plaintiffs' Third Set of Interrogatories and Second Request for Production of Documents and Things (Doc. #68 at Ex. 42); (2) Defendants' Third Amended Response to Plaintiffs' First Request for Production of Documents (Doc. #68 at Ex. 47); (3) Defendants' Second Amended Response to Plaintiffs' Second Request for Production of Documents and Things (Doc. #68 at Ex. 48); (4) Defendants' Response to Plaintiffs' Third Request for Production of Documents to Defendants Wayne County, Hornbuckle, Hills, Florios, and Troszak (Doc. #68 at Ex. 59); and (5) Defendants' Amended Response to Plaintiffs' Third Set of Interrogatories and Second Request for Production of Documents and Things (Doc. #68 at Ex. 62).[4] Plaintiffs seek an order requiring Defendants and/or their attorneys of record to sign these

---

[4] When Defendants filed their motion for leave to file a supplemental response to Plaintiffs' motion for default judgment, on September 20, 2012, they also purported to correct these deficiencies by attaching discovery response signature pages, each with a back-dated signature of Defendants' prior counsel, Karie Boylan. (Doc. #93 at Ex. 17). However pragmatic and good-intentioned this move may have been, it is ineffective because, at the time Ms. Boylan signed the discovery responses, she was no longer Defendants' counsel of record. Fed. R. Civ. P. 26(g).

discovery responses, attesting to their truthfulness and completeness, as required by the Federal Rules, including 26(g) and 33(b)(5).[5]

### iii. Document Production

In their June 2, 2011 Second Request for Production of Documents, Plaintiffs asked that Defendants produce training materials relating to various subjects, including the observation and monitoring of prisoners, the assignment of prisoners to maximum security wards, the classification of prisoners, the mental health assessment and/or screening of prisoners, and jail staff response to suicide attempts of prisoners (collectively the "training materials"). (Doc. #68 at 26-27). Defendants responded to these requests for production by stating, "Plaintiffs are invited to review all documents and training materials responsive to this request which are maintained in the Sheriff Department Training Unit." (Doc. #68 at Ex. 42, Rsp. 15-19).

Plaintiffs assert that despite suggesting multiple dates when they were available to inspect the documents at Defendants' offices (and despite the fact that the court had already ordered production of the documents (Doc. #32)), Defendants never afforded them the opportunity to do so. (Doc. #68 at 26-29). Defendants also rebuffed Plaintiffs' request that Defendants produce the documents, rather than having Plaintiffs physically inspect them at Defendants' offices. (*Id.*). Accordingly, Plaintiffs seek an order requiring Defendants to produce these materials for inspection and/or provide copies to Plaintiffs.

In sum, Plaintiffs' motion details a lengthy history of Defendants' alleged discovery misconduct, and they ask the court to enter a default judgment in their favor. In the alternative, Plaintiffs ask that the court: strike Defendants' Answer to their Third Amended Complaint; accept the facts alleged in their Third Amended Complaint as true; stay all dates in the court's

---

[5] The court has already ordered Defendants to provide appropriately signed discovery responses. (Doc. #96 at 1).

Amended Scheduling Order (Doc. #63); order Defendants to produce witnesses for deposition; order Defendants to produce proper (signed) responses to Plaintiffs' discovery requests; and award monetary sanctions. (Doc. #68 at 2-3).

### B. Analysis

#### 1. Applicable Legal Standards

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may issue further just orders. They may include the following: . . . rendering a default judgment against the disobedient party . . . ." Fed. R. Civ. P. 37(b)(2)(A)(vi). The rule further provides that, "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In other words, "A district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of their lawsuit or entry of default judgment against them." *Pavlik v. Brand Scaffold Builders, LLC*, 2008 WL 597160, *4 (E.D. Mich. Mar. 4, 2008) (quoting *Bank One of Cleveland N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)). Among the variety of discovery sanctions available to a district court, however, "the entry of a default judgment against a defendant or an order of dismissal against a plaintiff are the court's 'strongest weapon[s].'" *Stevenson*, 2012 WL 1883282, at *3 (citing *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) ("A district judge holds a variety of sanctions in his arsenal the most severe of which is the power to issue a default judgment.") and *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988) ("Dismissal of an action for failure to cooperate in discovery is a sanction of last resort.")). The Supreme Court has

justified these harsh sanctions by acknowledging their value as a specific and general deterrent:

> [A]s in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

In *Regional Refuse*, the Sixth Circuit articulated four factors for courts to consider when evaluating a motion for default judgment brought pursuant to Rule 37, namely: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less dramatic sanctions were imposed or considered before dismissal was ordered.[6] *Id.* at 155. "'Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct,' i.e., conduct that is 'perverse in resisting authority' and 'stubbornly disobedient.'" *Stevenson,* 2012 WL 1883282, at *3 (internal citations omitted). "Bad faith is more than 'mere gamesmanship or garden variety discovery abuses.'" *Universal Health Group v. Allstate Ins. Co.*, 2012 WL 488740, *2 (E.D. Mich. Jan. 9, 2012).

### 2. *Default Judgment is Not Warranted at this Time*

In this case, while the court is troubled by Defendants' conduct throughout the course of discovery, the record does not warrant the entry of a default judgment or the imposition of other drastic remedies (such as striking Defendants' Answer) which might have the same effect.

As an initial matter, it is not clear that all of the conduct about which Plaintiffs complain actually violated a specific court order. For instance, one of Plaintiffs' principal argument is that

---

[6] Although *Regional Refuse* was superseded in part by Rule 37(c)(1) in 1993, because Plaintiffs' motion is premised on Rule 37(b), the factors articulated in *Regional Refuse* remain applicable here. *See Stevenson*, 2012 1883282, at *3, n. 4; *Pavlik*, 2008 WL 597160, at *4, n.9.

Defendants violated Magistrate Judge Komives' June 28, 2011 Order, which required Defendants to "conduct themselves ***in all future depositions*** in accordance with the Federal Rules of Civil Procedure." (Doc. #32) (emphasis added). However, much of the conduct about which Plaintiffs complain – and which the court finds to be some of the most abusive of the challenged conduct – occurred with respect to the *scheduling* of depositions, not with respect to conduct *during* a deposition. *See supra*, fn. 3; *see also*, Doc. #68, ¶¶40-54.[7] Regardless, consideration of the *Regional Refuse* factors also suggests that a default judgment is not warranted under the circumstances.

Under the test set forth in *Regional Refuse*, the first issue is whether Defendants' failure to adequately cooperate in discovery is due to willfulness, bad faith, or fault (as Plaintiffs believe) or due to the fact that Defendants' former employee and prior counsel, Karie Boylan, was "overwhelmed" and "struggling," as Defendants' current counsel indicated at the hearing. While prior counsel may well have been experiencing legitimate difficulties at work, that does not justify the abusive tactics she employed here. Defendants' counsel repeatedly refused to communicate with Plaintiffs' counsel about the scheduling of depositions and document inspection/production. (*E.g.*, Doc. #68 at 27-28). She requested extensions of time to respond to discovery requests, then let those dates lapse without communicating with Plaintiffs' counsel. (*Id.* at 29). She canceled numerous depositions (then refused to provide new dates), including one time at 7:00 a.m. the day of the deposition for reasons that are, at best, highly suspect. *See supra*, fn. 3. Defendants' attorney and client representatives failed to sign multiple sets of interrogatories and/or discovery responses, as required by Fed. R. Civ. P. 26(g) and 33(b)(5).

---

[7] This is not to say that Defendants did not violate any aspect of the court's prior discovery orders – indeed they failed to provide properly signed discovery responses and to produce documents which were subjects of the court's prior orders. But, as discussed below, those are matters that can be addressed with less drastic sanctions because there is no allegation that the materials have been concealed or destroyed – Defendants have just been very slow to produce them.

10

Signatures were still withheld even after the matter was brought to counsel's attention. While counsel's conduct was unjustified and resulted in unnecessary cost and delay to the Plaintiffs, it was more akin to inappropriate gamesmanship than the type of willful bad faith required for imposition of a default judgment. *Universal Health*, 2012 WL 488740 at *2.[8]

As to the second *Regional Refuse* factor, Plaintiffs argue that they have been prejudiced by Defendants' prolonged failure to cooperate in discovery. Obviously, counsel for Plaintiffs has been forced to expend a significant amount of time and energy on matters that should be simple enough: scheduling depositions, obtaining signed responses to written discovery, and receiving/reviewing documents that previously had been ordered produced by the court. Plaintiffs also argue that they may have been prejudiced by Defendants' timely failure to produce witnesses for depositions in that these witnesses' memories may have deteriorated over the months that have elapsed while Plaintiffs have been attempting to schedule their depositions. However, neither argument cuts in favor of a default judgment. While Plaintiffs' concerns about faulty memories may be legitimate, at this time, the court is not aware of any witness who has claimed not to remember the remarkable events that are at issue in this case due to the passage of time. Defendants' counsel represented that he is prepared to proceed with depositions, produce

---

[8] Moreover, while the court places the vast majority of the delay blame on the Defendants, in at least a few instances, Plaintiffs were not as proactive as they should have been in terms of addressing an issue that was clearly in a downward spiral. For example, Plaintiffs note that they gave Defendants two extensions of time to respond to their third set of discovery requests, ultimately making Defendants' responses due on December 19, 2011. They note that December, January and February went by without them receiving anything from Defendants. (Doc. #68 at 29). In February, Plaintiffs asked Defendants to stipulate to the entry of an order to compel, which request Defendants ignored. (*Id.*). Plaintiffs then did not file their instant motion until May 7, 2012. While the court is not suggesting that Plaintiffs should have moved to compel on December 20, 2011, it appears that they could have acted sooner than early May of the following year. Similarly, after counsel traded e-mails on December 16, 2011 about re-scheduling depositions that had been canceled, Plaintiffs were waiting to hear back from Defendants as to which dates would work. Although Defendants' counsel did not respond, Plaintiffs waited two months, until February 17, 2012, to write to Defendants' counsel about the matter. (Doc. #68, ¶¶52-55).

requested documents, and otherwise advance discovery on the schedule set forth by the court in its recent scheduling order. (Doc. #96). In light of the foregoing, the court believes that any existing prejudice can be addressed by (if necessary) further modifying the new scheduling order and compensating Plaintiffs for any fees and costs incurred related to Defendants' abusive discovery tactics.

The remaining *Regional Refuse* factors also mitigate against entry of a default judgment. Although some sanctions had been imposed against Defendants already, they were fairly minor – an admonition to act professionally during depositions, an order to produce materials, and an award of costs and fees. More importantly, the prior orders did not expressly warn Defendants that a failure to cooperate in discovery or comply with an order of the court would lead to entry of a default judgment or the striking of Defendants' Answer. Finally, the court notes that this is not a case where Defendants have completely refused to participate in discovery. While Defendants have failed in many ways to appropriately conduct themselves during discovery, they have provided written responses to discovery requests (albeit unsigned in many instances), produced thousands of pages of documents, and produced several witnesses for deposition. This is a case of a Defendant that did not take its discovery obligations seriously enough – not a Defendant that concealed or destroyed evidence.

In sum, upon careful consideration of the *Regional Refuse* factors, as applied to the facts of this case, the court concludes that the extreme sanction of entry of a default judgment against Defendants is not presently warranted. However, Defendants are hereby admonished to comply with this court's Second Amended Scheduling Order (Doc. #96) and the applicable Rules of Civil Procedure, and to conduct themselves cooperatively, and in good faith, with an eye towards satisfying Rule 1's objective of achieving the "just, speedy, and inexpensive determination" of

this action. They are warned that further noncompliance with the Federal Rules or the court's orders may result in the entry of a default judgment in favor of Plaintiffs, and/or any other relief the court deems appropriate.

### 3.     The Imposition of Less Drastic Sanctions and the Second Amended Scheduling Order

Fed. R. Civ. P. 37(a)(5) provides that if a motion for an order compelling discovery or disclosure is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[9] Courts generally will impose sanctions of escalating severity in the event that a party continues to engage in discovery abuses or commit additional violations of prior court orders. *See Pryor v. Wayne Co.*, 2011 WL 2517695, *1 (E.D. Mich. June 24, 2011).

In this case, despite being put on notice of their discovery misconduct (including with the filing of the instant motion), Defendants, as of the hearing in this matter, had not yet complied with numerous discovery obligations. They failed to schedule and produce witnesses for deposition, failed to produce documents for inspection (as previously ordered by the court), and failed to sign discovery responses. For these reasons, this court has entered a Second Amended Scheduling Order (Doc. #96),[10] which grants much of the alternative relief requested by Plaintiffs, and which outlines specific steps the parties must take to advance discovery in this

---

[9] In addition, an award of costs and fees is appropriate under Rule 37(b)(2)(C) because Defendants did violate certain aspects of Magistrate Judge Komives' prior discovery orders (regarding the production of documents and the submission of proper and timely discovery responses). *See, e.g.,* footnote 6, *supra*.

[10] In addition, although not specifically set forth in the Second Amended Scheduling Order, Defendants were ordered at the hearing to provide Plaintiffs with at least two dates for Plaintiff's counsel's inspection (and copying, if desired) of the training materials by October 5, 2012. Alternatively, Defendants were permitted to produce copies of the training materials to Plaintiffs on or before October 9, 2012. The court reiterates that obligation here.

case. In addition, the court RECOMMENDS that Plaintiffs be awarded monetary sanctions in the form of the reasonable costs and fees they incurred in: (1) preparing the instant motion for default judgment (Doc. #68); (2) preparing their response to Defendants' motion for leave to file a supplemental response to that motion (Doc. #94); (3) preparing for and attending the September 27, 2012 hearing on their motion for default judgment; (4) attempting to re-schedule, and/or prepare for depositions that were unreasonably postponed and/or cancelled by Defendants; (5) attempting to schedule a time to review the requested training materials; and (6) attempting to obtain signed discovery responses from Defendants.

Unless either party files objections to this order within the time permitted, or if objections are filed and overruled by the district judge, Plaintiffs' counsel may submit an affidavit to the court detailing the reasonable costs and expenses associated with the above items (including a list of the hours spent, the nature of the work performed, the identity of the attorney performing the work, and that attorney's hourly billing rate). If Plaintiffs' counsel submits such a statement, counsel for Defendants may file a response within fourteen (14) days thereafter. The court will then issue a ruling on the amount which Defendants must reimburse Plaintiffs.

Nothing in this Report and Recommendation shall restrict a party from pursuing any discovery or remedy otherwise available under the Federal Rules of Civil Procedure.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the District Court **DENY** Plaintiffs' request for the entry of a default judgment against Defendants. The court further **RECOMMENDS** that the District Court award Plaintiffs the reasonable costs and fees described above.

Dated: October 11, 2012               s/ David R. Grand
                                      DAVID R. GRAND
                                      UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 11, 2012.

                                                          s/Felicia M. Moses
                                                          FELICIA M. MOSES
                                                          Case Manager